UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.                                                       CR No. 03-081ML

NIGEL POTTER;
DANIEL BUCCI; and
BURRILLVILLE RACING ASSOCIATION
a/k/a LINCOLN PARK
a/k/a LINCOLN GREYHOUND PARK
a/k/a LINCOLN PARK, INC.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Renewed Joint Motion for Change of Venue filed pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure.[1] The Government objects. For the reasons set forth below, Defendants' motion is GRANTED.

### I. Procedural History

Defendants filed their initial Motion for Change of Venue on January 10, 2005. The Court, after having conducted individual *voir dire* of prospective jurors, denied the motion and the case proceeded to trial. On February 24, 2005, after thirteen days of testimony and five days of deliberations, the jury rendered not guilty verdicts on five counts of the indictment, but was unable to reach a verdict on the remaining counts. The Court declared a mistrial as to those counts. The Court subsequently set a new

---

[1] All three Defendants join in this motion.

1

impanelment date for April 26, 2005, which was vacated upon Defendants' filing of the instant motion for change of venue and a motion for continuance of the trial date.

## II. Legal Standard

Motions for change of venue based on a claim of prejudice against the defendant in the district where the case is to be tried are addressed to the discretion of the trial court. U.S. v. Gullion, 575 F.2d 26, 28 (1st Cir. 1978). Where, as here, a defendant moves for a change of venue based on assertions of presumed jury prejudice, the court must consider whether "prejudicial, inflammatory publicity about a case [has] so saturated the community from which [the] jury [is] drawn as to render it virtually impossible to obtain an impartial jury." U.S. v. Angiulo, 897 F.2d 1169, 1181 (1st Cir. 1990) (internal quotation marks and citation omitted). "To justify a presumption of prejudice under this standard, the publicity must be both extensive *and* sensational in nature." Id. at 1181.

## III. Discussion

Throughout the course of these proceedings, the Court has been concerned about the effect of the extensive publicity surrounding this case on Defendants' Sixth Amendment right to a fair trial. Because of the intense media attention given this case and other current issues that are closely related to the allegations in the indictment, this Court employed the following extraordinary measures to select a fair and impartial jury in the first trial: (1) the Court summoned a jury venire much larger than venires ordinarily summoned for a felony trial; (2) the Court required all prospective jurors to

complete a nine-page questionnaire; and (3) the Court conducted individual *voir dire* of those jurors not excused for cause or hardship based on their answers in the written questionnaire. Additionally, in furtherance of its obligation to protect Defendants' Sixth Amendment right to a fair trial, the Court ordered sealed those portions of Defendants' memorandum in support of the initial motion for change of venue which contained verbatim quotations of prospective jurors regarding their opinions, beliefs, and impressions about the allegations against Defendants, the existence of public corruption in Rhode Island in general, and their perceptions about John Harwood, the alleged intended recipient of the bribe in this case. Upon the conclusion of the first trial, and in accordance with First Circuit precedent, this Court ordered the release of Defendants' memorandum in unredacted form.

To decide this motion, the Court must assay both the quantity and quality of the press coverage. See id. Consequently, at oral argument on the instant motion, the Court asked Defendants to supplement their filing with a summary of all media coverage, print and electronic, published about this case in particular, as well as those issues that are closely related to the allegations in this case, *inter alia*, public corruption in general and the continuing efforts by the Narragansett Indian Tribe to obtain approval from the Rhode Island General Assembly to operate a gambling casino in Rhode Island. Defendants have complied with the Court's request. The Government also submitted a supplemental memorandum. Both submissions contain references to and copies of the extensive media coverage of this case and related issues.

As set forth in Exhibit A of Defendants' supplemental memorandum, there has been widespread media coverage of this case and those issues closely related to the

allegations of criminal conduct made against Defendants.  During the month-long period between the beginning of jury impanelment and the end of the first trial, this case was the topic of 51 articles in 3 newspapers,[2] 129 news broadcasts on 6 television stations,[3] and 689 news broadcasts on three radio stations.[4]  In addition, there were thirty-six other articles regarding Lincoln Park, public corruption, and/or casino gambling over this same period published in the three newspapers.

While for the most part the news coverage has been factual and fair and balanced, it has also been intense and somewhat provocative.  For example, in addition to the factual coverage of the evidence introduced at trial, The Providence Journal ran a front-page story containing the verbatim questionnaire answers of prospective jurors and another front-page story which included post-verdict comments of jurors who sat on the first trial.  Edward Fitzpatrick, THE LINCOLN PARK CASE - State's Corruption Roiled Jury Pool, Prov. J., Feb. 26, 2005, at A-01; Edward Fitzpatrick and Michael Corkery, Lincoln Park Deadlock - Acquittal on 5 Counts, No Verdict on 20 Others, Prov. J., Feb. 25, 2005, at A-01.  Moreover, the day after the jury returned its verdict, there was an interview of a trial juror commenting on the case during a prime-time radio talk

---

[2]These newspapers are The Providence Journal, The Pawtucket Times, and The Woonsocket Call.  The Providence Journal, Rhode Island's only newspaper of statewide circulation, is distributed to 173,000 readers daily and 254,000 readers every Sunday.  Both The Pawtucket Times and The Woonsocket Call, whose daily circulations average 15,649 and 26,000 readers respectively, serve regional markets.

[3]These television stations include WJAR-TV Channel 10, WLNE/WABC-TV Channel 6, WPRI Channel 12, WNAC-TV Channel 11, PAX-TV Channel 7, and RI News Station Channel 5.

[4]These radio stations are WHJJ Radio, WPRO Radio, and WRNI Radio.

show. The Dan Yorke Show (WPRO radio broadcast, Feb. 25, 2005) (transcript on file in Defs.' Supplemental Mem. Supp. Renewed Mot. for Change of Venue, Ex. B).

This Court is mindful that a motion for change of venue should only be granted where there is prejudice "so great" that a fair and impartial trial cannot be obtained. Fed. R. Crim. P. 21(a). As the Court and the parties prepare for a retrial, there is no reason to believe that public interest in the case will wane or media coverage will abate. Indeed, considering past history, just the opposite will occur. Given the current posture of this case as it stands ready for retrial, and taking into consideration the volume and intensity of pretrial publicity before the first trial, the continuation of coverage during and after the first trial, the publication of the verbatim answers from juror questionnaires, the published post-verdict interviews of jurors, and the current publicity regarding the Narragansett Indian Tribe's efforts to obtain legislative approval to operate a gambling casino, the Court finds that it would be nearly impossible to ensure Defendants' right to a fair and impartial jury drawn from a jury pool that has been and continues to be exposed to such publicity.

Accordingly, the Court will exercise its discretion to grant Defendants' Renewed Joint Motion for Change of Venue. Trial will be held at the Central Division of the District of Massachusetts.

SO ORDERED:

_____
Mary M. Lisi
United States District Judge
June 2, 2005

5