IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR. No. 03-81-01ML |
| | : | (Superseding Indictment) |
| NIGEL POTTER; | : | |
| DANIEL BUCCI; and | : | |
| BURRILLVILLE RACING ASSOCIATION | : | |
| a/k/a LINCOLN PARK | : | |
| a/k/a LINCOLN GREYHOUND PARK | : | |
| a/k/a LINCOLN PARK, INC. | : | |

**DEFENDANTS NIGEL POTTER'S, DANIEL BUCCI'S AND LINCOLN PARK, INC.'S MEMORANDUM IN SUPPORT OF PROPOSED PROTECTIVE INSTRUCTIONS ON WIRE FRAUD AND IN OPPOSITION TO GOVERNMENT'S PROPOSED EXCLUSION OF NO-STRINGS INSTRUCTION**

Prior to the initial trial in this case, defendants proposed Instruction Nos. 16 through 20, which asked this Court to distinguish between conduct which would violate the wire fraud statute and conduct which might be disreputable or distasteful to some jurors but which would not support a federal criminal conviction. This Court elected not to give affirmative instructions distinguishing between honest services wire fraud and non-criminal activity, limiting itself instead to instructions which covered the intent components of wire fraud. Following certain questions posed by the jury, however, this Court decided to give a supplemental jury instruction which did inform the jury that an intent to make a payment as a reward for past services or in order to ensure future services would not constitute wire fraud. The government has now lodged an objection, even to this instruction.

The First Circuit trilogy of *United States v. Sawyer,* 85 F.3d 713 (1st Cir. 1996) (*Sawyer I*), *United States v. Woodward,* 149 F.3d 46 (1st Cir. 1998), and *United States v. Sawyer,* 239 F.3d 31 (1st Cir. 2001) (*Sawyer II*) require a protective instruction in wire fraud cases where there is a

risk that a jury might conflate reprehensible misconduct which is not a violation of federal law with misconduct which is, and explicitly acknowledges that in cases such as this, where bribery is alleged, a *quid pro quo*/no-strings-attached instruction is essential.

Defendants will address these two points briefly.

**Protective Instruction**

In *Woodward, supra* at 55, the First Circuit stated explicitly that in *Sawyer I*, "[w]e mandated a protective instruction to be used in cases such as this, which would help the jury understand the difference between 'reprehensible misconduct' which is not a violation of federal law, and misconduct which does form the basis for a federal conviction." (quoting *Sawyer I* at 741). This case is not a gratuities case, as was *Sawyer/Woodward,* but the risk of prejudicial conflation is equally great. Some jurors might very well view with distaste a business's decision to pay a large bonus or retainer to a public official's law partner, even when that decision is not accompanied by an intent to deprive the public of anyone's honest services. Others might find reprehensible a desire to take advantage of the appearance of access to official power, even when no official activity is actually contemplated. Indeed, in the first trial, these risks apparently became actual as questions from the jurors indicated that personal feelings of right or wrong were taking precedence over the specific requirements of the federal criminal law. *See, Jury Question No. 1*

In circumstances as emotionally fraught as the ones presented here, the First Circuit mandates "a protective instruction," *Woodward, supra* at 55, to be given to ensure that jurors do not lose their bearings when attempting to reach difficult conclusions regarding the precise intent necessary to establish a violation of the federal criminal law.

as by a *quid pro quo* bribery. *STM* at 9, quoting *Sawyer II* at 41, quoting *Sawyer I* at 730.

The government misconstrues the import of the quoted language. *Sawyer I* certainly broadened honest services fraud "from *quid pro quo* bribery, to include a more generalized pattern of gratuities to coax 'ongoing favorable official action.'" *Woodward, supra* at 55, quoting *Sawyer I* at 730. But this is not to say that all honest services cases become fungible. Some cases remain bribery cases, while other honest services cases may be founded on the type of gratuities discussed in *Sawyer/Woodward.*

This is not a gratuities case. The *Indictment* explicitly charges the defendants with violating wire fraud statute by creating a scheme to pay a bribe in order to obtain additional VLTs at Lincoln Park. *Superseding Indictment* at ¶¶ 13, 35. The evidence it presented focused specifically on a proposal to recompense Mr. McKinnon if an increase in VLTs were achieved. And the government in the last case argued to the jury that the McKinnon proposal was a scheme to pay a bribe to gain specific ends, not a scheme to gain a generalized favorable reaction from John Harwood.

In these circumstances, this Court's supplemental instruction to the jury was not only correct, but necessary. It is not a federal crime if Mr. Bucci wished to reward Mr. McKinnon for

his past services or if Mr. Potter wished to ensure his future services. It is only a crime if either one or both of them intended to deprive the public of the honest services of John Harwood, that is, if strings were attached to the McKinnon payment. *Sawyer I* recognizes this point explicitly. It cites *United States v. Mariano,* 983 F.2d 1150, 1159 (1st Cir. 1993) for the proposition that "[u]nlike one who bribes, the gratuity offender 'gives the gift without attaching any strings, intending it instead as a reward for actions the public official has already taken or has already committed to take.'" Thus, in an honest services case premised on a bribery allegation, these factors are key for a proper jury assessment. *Sawyer/Woodward* was not a bribery case; hence, the language cited by the government. But this case is a bribery case, and it remains critical for the jury to distinguish between a reward or inducement without political strings and one which comes with strings attached, thereby seeking to unlawfully influence official action.

The Court's supplemental instruction was correct as far as it went, but should be augmented with the "no strings attached" language in *Sawyer/Woodward* as well.

Respectfully submitted,
NIGEL POTTER
By his Attorneys,

C. Leonard O'Brien (E.T.)

C. LEONARD O'BRIEN (#1886)
B. JEAN ROSIELLO, ESQ. (#2886)
MacFadyen, Gescheidt & O'Brien
The Owen Building, 101 Dyer Street
Providence, RI 02903

Respectfully submitted,
DANIEL BUCCI
By his Attorney,

Anthony Traini (E.T.)
ANTHONY M. TRAINI (#4793)
56 Pine Street
Providence, RI 02903

Respectfully submitted,
LINCOLN PARK, INC.
By its Attorneys,

John Tarantino (E.T.)
JOHN A. TARANTINO (#2586)
PATRICIA K. ROCHA (#2793)
Adler, Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

**CERTIFICATION**

I hereby certify that I caused the **original** of the within document to be hand-delivered to Judge Mary M. Lisi, and a **copy** of the within document to be hand-delivered to Craig Moore and Lee Vilker, Assistant United States Attorneys; John Tarantino, Esq.; and Anthony Traini, Esq., in the courtroom during the trial of this matter in U.S. District Court in Worcester, Massachusetts, on the 19th day of July, 2005.

Ellen Taylor