**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR No. 03-081ML** |
| | : | |
| **NIGEL POTTER;** | : | |
| **DANIEL BUCCI; and** | : | |
| **BURRILLVILLE RACING ASSOCIATION** | : | |
| **a/k/a LINCOLN PARK** | : | |
| **a/k/a LINCOLN GREYHOUND PARK** | : | |
| **a/k/a LINCOLN PARK, INC.** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL**

At the close of the Government's case, the defendants moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing in particular that the Government had failed to prove that the defendants intended to deprive the public of the honest services of a public official. The Government opposed this motion in argument before the Court and the Court reserved its decision on the motion. On August 8, 2005, the jury returned guilty verdicts against all defendants on Count One (conspiracy to commit honest services wire fraud) and returned guilty verdicts on numerous of the honest services wire fraud counts against all of the defendants.

Despite the guilty verdicts handed down by this conscientious jury, the defendants continue to press their motion for a judgment of acquittal. The Government continues to maintain that defendants' motion is devoid of merit.

In evaluating a Rule 29 motion, the Court is required to examine the evidence in the light most favorable to the Government and draw all reasonable inferences from that evidence to determine "if a rational mind might fairly find guilty under reasonable doubt." United States v. Rothrock, 806 F.2d 318, 320 (1st Cir. 1986). The Government maintains, as detailed below, that the evidence of defendants' guilt in this case was overwhelming so as to lead to findings of guilt beyond a reasonable doubt. That same evidence, when viewed in the light most favorable to the Government, is certainly sufficient such that a rational jury could find (as one did) the defendants guilty.

The crux of defendants' argument is their contention that the Government has failed to prove that they intended to improperly influence a public official. In continually pressing this argument, the defendants misconstrue what it is that the Government must prove. As argued over and over again before and during trial, it is simply irrelevant whether Mr. Harwood knew about the proposed payments, whether he in fact was in a position to assist in the approval of more VLT machines at Lincoln Park or even if the conspiracy had any likelihood of success. The only relevant issue has always been the defendants' intent, that is whether the "defendant[s] [] intended to influence that legislator in h[is] official action." United States v. Sawyer,

239 F.3d 31, 41 (1st Cir. 2001), *citing* United States v. Sawyer, 85 F.3d 713, 730 (1st Cir. 1996).[1] On this issue, the evidence presented at trial was simply overwhelming. Without intending to be exhaustive, this evidence included:

- documents sent by defendant Bucci to defendant Potter in which defendant Bucci expressed his view that John Harwood was an enormously powerful politician and a strong ally of Lincoln Park (Exhibits 2, 9 and 50);

- testimony of Skip Sherman and David Brents that they repeatedly informed the defendants of their view that the proposed payments to McKinnon and Harwood were inappropriate and illegal;

- the language of the pertinent facsimile transmissions themselves which lay out the manner in which the payments would increase dramatically, if, and only if, more VLT machines are approved by the Rhode Island state government (Exhibits 35, 37, 38, 39, 40 and 49);

- the amount of the proposed "bonus" payments to Mr. McKinnon which amounted to approximately twice the total annual compensation of Mr. Potter himself;

[1] Defendants' reliance on United States v. D'Amato, 39 F.3d 1249 (2d Cir. 1994), is misplaced. In D'Amato, the defendant, a lobbyist, was not charged with honest services wire fraud or in any way acting improperly in attempting to persuade a public official to adopt a certain position. Rather, the defendant was charged with defrauding the very corporation that had hired him to perform lobbying of his brother, then Senator D'Amato. In reversing the conviction, the Second Circuit held that there was insufficient evidence that by concealing the nature of his work for the corporation that the defendant intended to injure the corporation that hired him. Id. at 1257. To the contrary, the evidence showed the direct opposite, that the defendant intended to help his employer. In this case, of course, the defendants are charged with honest services wire fraud and the evidence produced at trial was more than sufficient to show that defendants intended to unlawfully influence a public official and to deceive the public concerning the nature of the proposed payments.

- the manner in which the defendants kept Skip Sherman, then President of Wembley USA and defendant Bucci's superior, in the dark concerning the payments to be made to McKinnon and Harwood, culminating in defendant Bucci's clear statement that he doesn't "want Denver to know our business" (Exhibit 107);

- the language used by Mr. Bucci in various faxes in which he described the purpose of the proposed payments as giving "them" the push for approval because "these folks (and their designees) are going to be in power for the next 4 years, plus." (*See*, *e.g.*, Exhibits 37, 39 and 40);

- Mr. Potter's failure to disclose the two most material aspects of the proposed payments (the amount and the linkage to more machines) to the Wembley PLC Board of Directors prior to its approval of the 2001 budget which included an additional $600,000 in "legal fees";

- Mr. Potter's statements at the January 24, 2001, Wembley USA Board meeting that the PLC Board had approved the payments (at least in principle) and that it was a "done deal"; and

- Mr. Potter's conduct in meeting with Mr. McKinnon, on or about September 13, 2000, for the first time since 1997, only a couple of weeks after Mr. Bucci first raised the possibility of paying McKinnon a $1 million performance bonus.

All of this evidence, and more, when viewed in the light most favorable to the Government, was certainly sufficient for a rational jury to conclude that the defendants intended these multi-million dollar payments to influence John Harwood, rather than to reward their local attorney for years of hard work. The jury's verdict was not only rational but was justified in light

of the overwhelming evidence of the defendants' criminal intent.[2]

Respectfully submitted,
UNITED STATES OF AMERICA
By its attorneys

ROBERT CLARK CORRENTE
United States Attorney

LEE H. VILKER
Assistant U.S. Attorney

Dated: August 10, 2005

[2] Defendants also argue that the Government failed to prove the second aspect of the intent element, that is that the defendants intended to deceive the public about the nature of the proposed payment. The overwhelming evidence presented at trial was that the defendants intended to disguise the true nature of the payments to Speaker Harwood as legal fees to his law partner. The jury was well within its province to determine that this evidence was sufficient to establish an intent to deceive on the part of all the defendants.

**CERTIFICATE OF SERVICE**

I, Lee Vilker, hereby certify that on this 10th day of August, 2005 I served by regular mail a copy of the within Government's Memorandum in Opposition to Defendant's Motion For Judgement of Acquittal on the following counsel of record:

John Tarantino, Esquire
Adler Pollock & Sheehan
2300 Financial Plaza
Providence, Rhode Island 02903

C. Leonard O'Brien, Esquire
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Anthony M. Traini, Esq.
56 Pine Street - Suite 2
Providence, RI 02903

Lee Vilker, A.U.S.A.