UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.  CR No. 03-081ML

NIGEL POTTER;
DANIEL BUCCI; and
BURRILLVILLE RACING ASSOCIATION
a/k/a LINCOLN PARK
a/k/a LINCOLN GREYHOUND PARK,
a/k/a LINCOLN PARK, INC.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Joint Motion for New Trial, as well as Defendant Burrillville Racing Association's individual Motion for New Trial, both of which are made pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Defendants jointly move for a new trial on the basis of the government's alleged misconduct during its rebuttal argument. Burrillville Racing Association ("Lincoln Park") argues that a new trial is warranted because the jury verdicts are against the weight of the evidence. For the reasons set forth below, both motions are denied.

### I. FACTS

Defendants Nigel Potter ("Potter"), Daniel Bucci ("Bucci"), and Lincoln Park were indicted on several counts of honest services wire fraud each, in violation of 18 U.S.C. §§ 1341 and 1346, and one count of conspiring to commit honest services wire fraud, in violation of 18 U.S.C. § 371. Trial began on July 19, 2005. After eleven days of testimony, all parties rested.

1

On August 3, 2005, the government and Potter presented their closing arguments to the jury. On August 4, 2005, counsel for Bucci and Lincoln Park made their closing arguments, during which, counsel asserted that the government had failed to meet its burden of proof by not introducing sufficient evidence to establish one or more of the elements of the offenses charged.

Following defense counsels' closing arguments, the government offered its rebuttal argument. At the beginning of his rebuttal, the prosecutor stated:

> I also want to mention just briefly what the case is not about. It is not about who is not charged. It is not about what is not charged. It is not about, well, what didn't the Government bring in. It's not about what didn't the Government tell you. It is not about one line in one exhibit, one line in another exhibit.
> It's not about any of that. Why? Because, as the Court will instruct you, your job is to decide this case on this evidence, the evidence you've heard in this courtroom, and that's all, according to the law as the Court provides it.
> If something's missing, if something isn't perfect, blame me. The Government's not perfect. I'm not perfect. Maybe it could have been done better. *Maybe there could have been something that I could have given you, brought in here. Maybe I could have brought something in that the Court would have allowed in that didn't come in.*[1]

---

[1] Defendants contend that the official trial transcript misstates what the prosecutor actually said in his rebuttal. They argue that the court reporter originally transcribed a slightly different version of the prosecutor's statements in her unedited "real time" draft version of the transcript (hereinafter "real time draft"). Defendants assert that the real time draft stated as follows:

> If something is missing, if something isn't perfect, blame me. The Government is not perfect. I may not be perfect. Maybe it could have been done better. *Maybe there could have been something that I could have given you. Maybe there's something I could have given you or maybe something I could have brought in that the Court would have allowed, that the Court didn't let come in.*

(Defs' Joint Memo at 2 n.3 (quoting Trial Tr. 89:15-19, 21-24, Aug. 4, 2005 (emphasis added).) Defense counsel have all submitted affidavits in which they attest to having heard the version of the prosecutor's statements as offered in the real time draft. In particular, defense counsel swear to have heard the prosecutor conclude this passage with the phrase, "that the Court didn't let come in," rather than the phrase, "that didn't come in," as reported in the official transcript.

The Court is not persuaded that there are any errors in the official transcript. First, the

> I brought you the evidence as we have it. I put it before you, and that's what you have to work with, that and what the defense put on and what the Court instructs you about.

(Trial Tr. 72:20-25, 73:1-17, Aug. 4, 2005 (emphasis added).)

Defendants did not object to any of these statements at the time they were made. After the prosecutor finished his entire rebuttal argument, the Court dismissed the jurors for a short recess prior to charging them. At that point, Defendants registered their objections to the prosecutor's statements regarding other evidence that might have been available but was not put into the record. Specifically, Defendants argued that, by referring to the existence of other evidence not introduced at trial, the prosecutor invited the jury to consider evidence outside of the record, lowered the government's burden of proof, and created unfair prejudice. Defendants moved for a mistrial, or, in the alternative, asked that the Court give a curative instruction to the jury.

The government opposed the motion for mistrial, and argued that a curative instruction was not necessary. The prosecutor contended that his comments were "fair reply" to arguments made by Defendants' counsel concerning the absence of certain evidence at trial. In addition, he argued that his statement regarding the potential existence of additional evidence not admitted at trial must be considered along with the statements made immediately thereafter regarding the

---

real time draft is just that: a draft version of the court reporter's contemporaneous transcriptions. It is not the official transcript of court proceedings.

    Most importantly, the official tape recording of the prosecutor's rebuttal argument unmistakably supports the version recorded in the official transcript. Defense counsel now state that they "cannot explain the discrepancy [between the tape recording and what they remember hearing], but believe that there may have been a malfunction in the courtroom recording equipment. . . ." (Defs.' Joint Mem. at 3 n.3.) However, on August 5, 2005, the Court afforded all defense counsel the opportunity to listen to the tape recording, and after the tape was played, Defendants voiced no objection to either the recording or the official transcript.

3

jury's duty to decide the case only on the evidence before them.

The Court denied Defendants' motion for mistrial, but granted the motion for a curative instruction. The Court immediately instructed the jury:

> Members of the jury, as I told you on the very first day of trial, at the end of the case, after you've heard all the evidence and arguments of counsel, you would be given final and detailed instructions on the law which you must follow.
> Before I begin those instructions, however, there is one additional cautionary or limiting instruction that I will give you, and it relates to something that [the prosecutor] said in his rebuttal.
> Remember this morning that you heard from [counsel for Defendant Bucci], [counsel for Defendant Lincoln Park], and then you heard from [the prosecutor]. In the course of his rebuttal testimony [sic], [the prosecutor] indicated and said something along the lines of that perhaps there was some additional evidence he might have been able to bring or that the Court would have allowed for your consideration.
> It is not something that you should take into account at all, and I'm asking you at this time to disregard those comments completely.
> You'll recall at the beginning of the case I told you that you would only decide this case based on the evidence that you hear that is presented during the trial, and so [the prosecutor's] comments regarding other evidence should completely be disregarded and follow [sic] the instruction that the Court gave you at the beginning, which is to consider only evidence that has been admitted.
> You'll probably hear it again in the course of the next 45 minutes as I give you these detailed instructions on the law that you must follow.

(Trial Tr. 90:5-25, 91:1-9, Aug. 4, 2005.)

Within the general instructions that followed, the Court told the jury:

> For the purpose of determining whether or not the Government has sustained its burden of proof, you must evaluate all the evidence. The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence and any facts to which the parties have stipulated.
> Any proposed testimony or proposed exhibit to which an objection was sustained by the Court, as well as any testimony ordered stricken by the Court, must be entirely disregarded.
> . . . .
>
> The remarks, statements and questions by counsel are not evidence, and you are not to consider them as evidence during your deliberations.

4

> . . . .
>
> In determining the facts, you are to consider only that evidence which has properly been placed before you.
> It is the Court's duty to pass upon the admissability of offered evidence, that is, to decide whether or not offered evidence should be considered by you.
> Evidence admitted by the Court is properly before you for your consideration. Evidence which the Court has refused to admit or may have stricken from the record after you heard it is not a proper subject for your deliberation, and you should not consider it.
> In some instances, evidence has been admitted for a limited purpose or against fewer than all Defendants. You must consider such evidence only in the manner in which I have instructed you and not for any other purpose.

(Id. at 93:23-25, 94:1-7, 121:1-3, 23-25, 122:1-14.)

On August 8, 2005, after more than two full days of deliberation, the jury returned the verdicts, finding Defendants guilty of some of the counts in the indictment and finding them not guilty as to others. Specifically, Potter was found guilty on Counts I, III, V, and X. Potter was found not guilty on Counts VII and VIII. Bucci was found guilty on Counts I, II, IV, VI, and IX. Bucci was found not guilty on Counts XI and XII. Lincoln Park was found guilty on Counts I, VI, and IX. Lincoln Park was found not guilty on Counts XI and XII. Defendants filed their motions for a new trial on August 15, 2005.

## II. DISCUSSION

A. Defendants' Joint Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure provides that a district court "may grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). While "the decision to grant or deny a new trial is committed to the sound discretion of the district court[,]" United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996) (internal quotation marks and citation omitted), this "remedy . . . is rarely used; it is warranted 'only where there would be a miscarriage of

5

justice' or 'where the evidence preponderates heavily against the verdict.'" Id. (quoting United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979) (internal quotation marks and citation omitted)). Consequently, the grant of a new trial under Rule 33 "must be used sparingly. . . ." United States v. Conley, 249 F.3d 38, 45 (1st Cir. 2001).

Defendants argue that a new trial should be granted because of the government's conduct during its rebuttal argument. Inappropriate remarks made by prosecutors in closing argument warrant a new trial only if they are both "inappropriate and harmful." United States v. Balsam, 203 F.3d 72, 87 (1st Cir.), cert denied, 531 U.S. 852 (2000) (internal quotation marks omitted) (quoting United States v. Laboy-Delgado, 84 F.3d 22, 29 (1st Cir. 1996) (internal citation omitted)). "Prosecutorial comments will be found harmful if, 'in the totality of the circumstances, they would probably have affected the outcome of the trial.'" Id. (quoting Laboy-Delgado, 84 F.3d at 29). This determination of whether prosecutorial misconduct has "so poisoned the well" that a new trial is required involves the weighing of several factors: (1) the severity of the misconduct; (2) the context in which it occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; (4) the strength of the evidence against the defendant; and (5) whether the conduct was deliberate or accidental. See United States v. Gonzalez-Gonzalez, 258 F.3d 16, 25 (1st Cir. 2001); United States v. Levy-Cordero, 67 F.3d 1002, 1008 (1st Cir. 1995), cert. denied, 517 U.S. 1162 (1996).

1. Part One of the Joint Motion for New Trial

Under Part One of their supporting memorandum ("Part One"), Defendants object to the following comments made by the prosecutor during his rebuttal argument:

> If something's missing, if something isn't perfect, blame me. The

> Government's not perfect. I'm not perfect. Maybe it could have been done better. Maybe there could have been something that I could have given you, brought in here. Maybe I could have brought something in that the Court would have allowed in that didn't come in.

(Trial Tr. 73:7-13, Aug. 4, 2005.) Defendants' principal contention is that the government's reference to evidence outside of the record constitutes prosecutorial misconduct so severe that it likely affected the outcome of the trial.

The Court first questions whether Defendants properly objected to the statements at issue. Defendants did not object to the comments at the time they were made. Rather, Defendants waited to lodge their objections until the prosecutor finished his remarks. It appears that it is an open question in the First Circuit whether a party must make an immediate objection to a particular comment during a closing argument in order to properly preserve a question for appeal, or whether it is sufficient to object at the conclusion of argument. See Laboy-Delgado, 84 F.3d at 31 n.7 ("[W]e assume *arguendo*, but do not decide, that the appellant lodged a timely objection to this line of argument. In point of fact, no contemporaneous objection was raised. However, the appellant advanced an objection to this line of argument at the end of the prosecutor's rebuttal and simultaneously moved for a mistrial."); United States v. Wihbey, 75 F.3d 761, 771 (1st Cir. 1996) (finding it to be a "close" question whether the defendant contemporaneously objected to comments made by the prosecutor when the objection was not made until after the conclusion of argument, but treating the issue as preserved for appeal "[f]or the sake of argument"); compare United States v. Sepulveda, 15 F.3d 1161, 1186-87 (1st Cir. 1993), cert. denied, 512 U.S. 1223 (1994) ("[A] criminal defendant who believes that a prosecutor's closing argument goes too far must usually object to the offending statements when and as they are uttered.") with United States

v. Mandelbaum, 803 F.2d 42, 44 n.1 (1st Cir. 1986) (finding an objection to the prosecutor's argument to be sufficiently timed to preserve appeal when it was made at the close of the argument, "before the jury retired and in time for the judge to take corrective action if . . . necessary."). For the purposes of deciding this motion, the Court will assume *arguendo* that Defendants properly preserved their objections to the prosecutor's remarks.

"[A] prosecutor may not . . . indicate to the jury that information known to the prosecutor, but not admitted in evidence, supports the government's theory of the case." United States v. Josleyn, 99 F.3d 1182, 1197 (1st Cir. 1996), cert. denied, 519 U.S. 1116 (1997); see also United States v. Young. 470 U.S. 1, 18-19 (1985); United States v. Eyster, 948 F.2d 1196, 1207 (11th Cir. 1991) ("Implying the existence of additional evidence not formally before the jury severely impairs the likelihood of a fair trial."). By inviting the jury to consider that the government "could have brought something in that the Court would have allowed in that didn't come in[,]" the prosecutor inappropriately suggested that there might be additional evidence of Defendants' guilt that was not introduced at trial.

While the prosecutor's remarks were inappropriate, their impact must be viewed in the context in which they were made. The prosecutor, in whole, stated:

> I also want to mention just briefly what the case is not about. It is not about who is not charged. It is not about what is not charged. It is not about, well, what didn't the Government bring in. It's not about what didn't the Government tell you. It is not about one line in one exhibit, one line in another exhibit.
> It's not about any of that. Why? Because, as the Court will instruct you, your job is to decide this case on this evidence, the evidence you've heard in this courtroom, and that's all, according to the law as the Court provides it.
> If something's missing, if something isn't perfect, blame me. The Government's not perfect. I'm not perfect. Maybe it could have been done better. Maybe there could have been something that I could have given you, brought in

here. Maybe I could have brought something in that the Court would have allowed in that didn't come in.
      I brought you the evidence as we have it. I put it before you, and that's what you have to work with, that and what the defense put on and what the Court instructs you about.

(Trial Tr. 72:20-25, 73:1-17, Aug. 4, 2005.) The prosecutor explicitly stated that the jury could only consider that evidence that had been properly placed before them, and that any evidence that the government "didn't . . . bring in" or that was not "heard in this courtroom" could not be taken into account. Because the objectionable comments, which insinuated that the government could have introduced additional evidence supporting a guilty verdict, were preceded and followed by warnings from the prosecutor that the government had submitted all of the evidence available to it and that the jury could only consider the evidence that was brought before them, any potential harm created by the offending language was thereby diminished.

Any negative impact was also mitigated by the curative instruction given by the Court. Immediately after Defendants objected to the prosecutor's comments, the Court issued a curative instruction specifically identifying the prosecutor's comments, cautioning that the comments should be completely disregarded, and reminding the jury that they should consider only the evidence presented during trial. Given the presumption that juries follow the court's instructions, United States v. Kornegay, 410 F.3d 89, 97 (1st Cir. 2005), the Court's curative instruction dispelled any negative impact that may have resulted from the prosecutor's remarks.

The strength of the evidence against Defendants also supports a finding that the prosecutor's remarks did not create any significant prejudicial impact. The evidence against Defendants was particularly persuasive given that much of it consisted of Defendants' own written words. The faxes to and from Defendants Bucci and Potter, which comprised the bulk of

the government's case, set forth in graphic detail the amount and purpose of the bribe (more Video Lottery Terminals ( VLTs)), and identified the recipient as McKinnon's firm (McKinnon & Harwood).

The prosecutor's remarks were not accidental. At sidebar, following Defendants' objections to his remarks, the prosecutor opposed Defendants' motions for a mistrial and for a curative instruction, stating that his comments were "fair reply" to Defendants' arguments that the government failed to introduce sufficient evidence on a number of elements of the charges. (Trial Tr. 88:2-8, Aug. 4, 2005.) The prosecutor also noted, though, that immediately after he made the remarks at issue, he reminded the jury to decide the case on the evidence before them, in accordance with the Court's instructions. (Id. at 15-20.) Thus, while the prosecutor's remarks were indeed deliberate, they were not made in bad faith.[2]

Ultimately, perhaps the strongest indication that the prosecutor's remarks did not affect the outcome of the trial is the jury's return of a split verdict. If the jury truly had been persuaded by the prosecutor's inappropriate implication of the existence of evidence outside of the record, it presumably would have found Defendants guilty of all counts in the indictment. Instead, by acquitting Defendants on some of the charges, and by doing so in a consistent and logical manner,

---

[2]Defendants' reference to the government's attempts to introduce government's Exhibit 150 is perplexing. (Defs' Joint Memo at 5.) Exhibit 150 is a copy of the minutes of a Wembley USA Board of Directors meeting in June, 2000. For a number of reasons, including one articulated by counsel for Defendant Potter, the Court refused to admit the exhibit as a full exhibit. The reason advanced by Potter was that the inflammatory language ascribed to Elliott was ambiguous and therefore it would only tend to confuse the jury. Defendants now point to Elliott's Grand Jury testimony to support their claim of bad faith by the prosecution. The Court did not have access to Elliott's Grand Jury testimony during trial. Now having seen it, this Court finds that it supports the government's claim as to the import of the language used by Elliott in Exhibit 150. Contrary to Defendants' claims, there is no evidence of bad faith on the part of the prosecution.

the jury demonstrated an ability to fairly and impartially weigh the evidence, follow the Court's instructions, and disregard the prosecutor's inappropriate remarks.[3] Taking into consideration the totality of the circumstances, the Court cannot conclude that the prosecutor's remarks during rebuttal "probably . . . affected the outcome of the trial." Laboy-Delgado, 84 F.3d at 29.

2. Part Two of the Joint Motion for New Trial

Part Two of Defendants' supporting memorandum ("Part Two") contains "Further Considerations" that, Defendants claim, should be taken into account when considering their Joint Motion for New Trial. Defendants candidly admit that they failed to contemporaneously object to some of these matters. (Defs.' Joint Mem. at 23 n.16.) Nonetheless, in Part Two, Defendants object to comments made by the prosecutor in his rebuttal argument that allegedly either misstate and mischaracterize the evidence or contain inappropriate expressions of personal opinion and belief.

a. Misstatements and Mischaracterizations of Evidence

Mischaracterizations of evidence by a prosecutor in closing argument can, in certain instances, be so inappropriate as to constitute plain error. See United States v. Santana-Camacho, 833 F.2d 371, 373 (1st Cir. 1987). Defendants cite to two instances in which they allege the prosecutor, during his rebuttal argument, misstated or mischaracterized the evidence admitted at trial.

The one comment that Defendants did contemporaneously object to was the prosecutor's assertion that Potter never informed Nicholas Casiello ("Casiello"), a lawyer hired by Wembley

---

[3] The split verdict also supports a denial of Defendants' motion based on their claim that the prosecutor made an improper plea for sympathy.

Park was making the payment "in exchange for VLT machines." (Trial Tr. 83:4-5, Aug. 4, 2005.) Defendants argue that this characterization of the evidence is wrong because, according to Casiello, Potter told him "that Lincoln Park wanted to get the approvals necessary to increase the number of gaming machines at Lincoln Park." (Trial Tr. 11:13-15, Aug. 2, 2005.)

When viewed in its entirety, however, Casiello's testimony does indeed support the government's characterization of the evidence. Casiello stated that Potter mentioned Lincoln Park's desire to receive legislative approval for additional VLTs, but he did not testify that Potter informed him of the explicit connection between that approval and the additional $3 million in payments that were to be made to McKinnon & Harwood. When asked what details Potter provided about the proposed payment to McKinnon & Harwood, Casiello answered: "I remember that he said it could either be a retainer or a success fee and that it could be $500,000, but he was not sure what form it would take or the amount." (Id. 12:9-12.) The government's comments did not mischaracterize the record.

Defendants now also object to the prosecutor's broad assertion that Potter concealed "from everybody" both the total amount of the proposed payment to McKinnon & Harwood and the relationship between the payment and legislative approval of additional VLTs. In rebuttal, the prosecutor argued:

> Mr. Potter didn't tell everybody everything. And the two things he kept quiet from everybody, from everybody, the total amount, it could amount to millions of dollars, four to be exact, 2.4 million if you look at the four years that the $600,000 was included in the budget for, and he didn't tell everybody that was linked to the machines.

(Trial Tr. 75:10-16, Aug. 4, 2005.) As Defendants correctly note, these remarks misstate the

12

the January 24, 2001, meeting of the Wembley USA board of directors, during which he stated that the payment could approach $4 million if permission for additional VLTs was received.

While the Government's comments were inaccurate, the Court finds that these remarks are not so harmful as to require a new trial. The jury was instructed that its recollection of the evidence, and not the that of the Court or counsel, should control during deliberations. See United States v. Ocampo- Guarin, 968 F.2d 1406, 1412 (1st Cir. 1992) ("To the extent the appellant now suggests the prosecution mischaracterized the evidence, the court properly and repeatedly instructed the jury that its recollection, and not statements by lawyers, was controlling."). Moreover, as discussed supra, the relative strength of the evidence against Defendants, together with the jury's reasoned return of a split verdict, further counsels against a finding that the prosecutor's misstatement affected the outcome of the trial.

b. Statements of Personal Belief

Defendants also contend that the prosecutor inappropriately interposed his personal opinions or belief into a number of statements made during his closing and rebuttal argument. "There is an abundance of First Circuit case law holding it improper for the prosecutor to inject into his jury argument his personal beliefs about conclusions to be drawn from the evidence." United States v. Cresta, 825 F.2d 538, 555 (1st Cir. 1987), cert. denied, 486 U.S. 1042 (1988) (citing cases). "The principal concerns behind a prosecutor's expression of opinion is that, 1) it implies knowledge of information not before the jury and, 2) it places in issue the credibility of counsel, with the government holding a clear advantage." Id.

Defendants object to a number of statements made during the government's closing and

13

prosecutor's closing remark that "if you read the faxes, the communications between those two men, start to finish, every word, I guarantee it screams that these Defendants are guilty, and I ask you to find them guilty." (Trial Tr. 84:1-5, Aug. 4, 2005.) Also inappropriate is the following comment: "I venture to say, ladies and gentlemen, that if you could round up all the lawyers in Rhode Island and ask them did you get a million-dollar bonus this year, you wouldn't get any positive responses. It may have been common business practice . . ., but it was also illegal." (Trial Tr. 24:1-6, Aug. 3, 2005.) Defendants argue that the prosecutor's remarks that "[i]t is not very often that the Government's able to come in and present evidence of an actual written agreement in a conspiracy case" (id. 26:18-20), that if the proposed payment to McKinnon & Harwood "showed up on the front page of the paper, everyone would know what it was" (id. 51:20-21), and that the payment is "how these things are done, ladies and gentlemen, with a wink and a nod and a knowing look, talking in code perhaps, not like super spies, perhaps, because everybody knows what you're talking about" (Trial Tr. 82:3-6, Aug. 4, 2005), all suggest his personal belief.

However, the Court again cannot find that the prosecutor's comments affected the outcome of the trial. The jury was instructed that the "remarks, statements and questions by counsel are not evidence, and you are not to consider them as evidence during your deliberations." (Trial Tr. 121:1-3, Aug. 4, 2005.) These individual comments are unlikely to have registered a substantial impact on the jury, given that they comprise but a fraction of what the jury heard during a two-week long trial and more than a total of six hours of closing arguments. See Cresta, 825 F.2d at 556 (finding "the length of the trial" and "the length of the closing arguments" as

14

B. Defendant Lincoln Park's Motion for New Trial

Lincoln Park moves separately for a new trial pursuant to Rule 33 on the grounds that the weight of the evidence preponderates against the jury's verdicts.

Where a motion for a new trial is based upon the weight of the evidence, a court may not grant the motion "unless it is quite clear that the jury has reached a seriously erroneous result." United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997) (internal quotation marks omitted) (quoting United States v. Rothrock, 806 F.2d 318, 322 (1st Cir. 1986) (internal quotation marks and citations omitted)). It is axiomatic that a trial judge does not sit as a thirteenth juror who may set aside a verdict simply because she would have reached a different conclusion. Rothrock, 806 F.2d at 322.

The Court, in its Rule 29 Order, denied Lincoln Park's Motion for Judgment of Acquittal, finding sufficient evidence for a reasonable jury to conclude that Lincoln Park was guilty on all counts on which it was convicted. The Court recognizes that it "has greater power to order a new trial than to overturn [the] jury's verdict through a judgment of acquittal." Id. at 321; see also Ruiz, 105 F.3d at 1501. The Court cannot say that the jury reached a "seriously erroneous result" in this matter. See Rothrock, 806 F.2d at 322 (internal quotation marks and citations omitted). As set forth in the Rule 29 Order, there was ample evidence to support the jury's finding that Lincoln Park is criminally liable for the acts of its former General Manager, Defendant Bucci.

15

## CONCLUSION

For the reasons discussed above, Defendants' Joint Motion for New Trial and Defendant Lincoln Park, Inc.'s Motion for New Trial are both DENIED.

SO ORDERED.

*Mary M. Lisi*

Mary M. Lisi
United States District Judge
September **27**, 2005